**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC D. HOVDE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 24-cv-00638 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| RAINER HUMMEL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case stems from a series of agreements governing loans Plaintiffs Eric and Steven Hovde (collectively, "Hovdes") provided to the developer of a failed real estate project in Mexico. Those agreements allegedly were breached by the developer, Jeffrey T. Riegel, and businesses associated with him. Riegel and his businesses were subsequently named as defendants in other suits brought by the Hovdes, including a prior case in this District. The Hovdes allege that Defendant Rainer Hummel paid almost all the legal costs associated with defending those earlier suits. The Hovdes now invoke this Court's diversity jurisdiction under 28 U.S.C. § 1332 to assert a state-law claim for tortious interference with contract based on Hummel's conduct. Specifically, they allege that Hummel funded Riegel's defense of the earlier suits as an inducement for Riegel to breach his contracts with the Hovdes. Hummel has filed a motion to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 67.) For the reasons that follow, the motion is granted.

**BACKGROUND**

For purposes of the motion to dismiss, the Court accepts as true all well-pleaded facts in the FAC and views those facts in the light most favorable to the Hovdes as the non-moving

parties. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The FAC alleges as follows.

In 2005, the Hovdes entered into multiple agreements with Riegel and three companies he controls: Isla Development, LLC ("Isla USA"), Isla Development Mexico, Sociedad Anonima de Responsabilidad Limitada ("Isla Mexico"), and JJBA Holdings, LLC ("JJBA") (collectively, "Isla Parties"). (FAC ¶ 9, Dkt. No. 26.) Isla Mexico and JJBA are organized as subsidiaries of Isla USA, and all three companies are ultimately owned solely by Riegel. (*Id.* ¶¶ 12, 25–26.) The agreements at issue all were connected to loans the Hovdes made to the Isla Parties to fund the development of a real estate project on an island off the coast of Mexico ("Isla Project"). (*Id.* ¶ 10.)

The relevant agreements include, first, a loan and security agreement ("Loan & Security Agreement") between the Hovdes and Isla USA. (*Id.* ¶ 11.) This agreement specified the initial loan amount, interest rate, and final due date of the loan. (*Id.* ¶¶ 13–14.) It also defined an Event of Default as occurring if Isla USA failed to make any payment of any installment of principal or interest when due. (*Id.* ¶ 15.) An acceleration clause in the agreement allowed the Hovdes immediately to demand repayment of outstanding principal and interest if an Event of Default occurred. (*Id.* ¶ 16.)

The second agreement, also between the Hovdes and Isla USA, was a mortgage note and guaranty agreement ("Mortgage Note & Guaranty"). (*Id.* ¶ 18.) The Mortgage Note & Guaranty obligated Isla USA to pay the Hovdes a percentage of net profits from the Isla Project, along with the principal and any interest due under the Loan & Security Agreement. (*Id.* ¶ 19.) The Mortgage Note & Guaranty specified that it was secured by a mortgage given by Isla Mexico and had an acceleration provision like the one in the Loan & Security Agreement. (*Id.* ¶¶ 20–21.)

Under the third agreement ("Mortgage Agreement"), Isla Mexico granted the Hovdes a mortgage on two parcels of property in the Isla Project ("Real Property"). (*Id.* ¶ 23.) The Mortgage Agreement specified that the mortgage was irrevocable and would remain in force until the date that all mortgage obligations had been fulfilled and any debts had been fully paid. (*Id.* ¶ 31.)

In the fourth agreement ("Unit Pledge Agreement"), Isla USA, JJBA, and Riegel agreed to grant the Hovdes a security interest in the entire ownership stake of the Isla Parties, further securing the Hovdes' loan under the Loan & Security Agreement. (*Id.* ¶ 33.) Under this agreement, if an Event of Default, as defined by the Loan & Security Agreement or the Mortgage Note & Guaranty, occurred, the Hovdes would have the right to cause the ownership of the Isla Parties to be transferred into their names or the name of their nominee. (*Id.* ¶ 34.)

The fifth and final agreement was a guaranty agreement ("Continuing Unconditional Guaranty") between the Hovdes and Riegel as an individual. (*Id.* ¶ 36.) Riegel guaranteed full performance of the agreements and personally guaranteed payment of all legal costs, reasonable fees, and expenses incurred by the Hovdes in trying to collect on their loan or in enforcing their rights to any collateral used to secure the loan. (*Id.* ¶¶ 37–38.)

After executing these initial agreements, the Isla Parties and Riegel proceeded with the Isla Project but soon returned to the Hovdes for additional funds. (*Id.* ¶ 41.) This became a pattern, and the Isla Parties and Riegel eventually asked the Hovdes for more money five times, leading to five amendments to the Loan & Security Agreement and the Mortgage Note & Guaranty. (*Id.* ¶¶ 41–46.) Following the fifth amendment of the loan agreements, the Isla Parties and Riegel, in part due to the 2008 financial crisis, were unable to repay immediately the money loaned by the Hovdes—by then, over $4 million. (*Id.* ¶¶ 46–47.) By December 31, 2008, despite

a brief forbearance period, the Isla Parties had not repaid any of the money due to the Hovdes, thus defaulting on their obligations. (*Id.* ¶ 50.)

In 2011, the parties turned to litigation. (*Id.* ¶ 51.) First the Hovdes sued Isla Mexico in a Mexican court to foreclose on the Real Property secured by the Mortgage Agreement. (*Id.* ¶ 52.) The Hovdes allege that, in 2016, while the foreclosure action was still pending, "Riegel and Hummel attempted to transfer title to the [Real Property] to an entity, Norway Capital, controlled by Hummel through a trust created by Scotiabank." (*Id.* ¶ 55; *see also* FAC, Ex. 15, Jeffrey Riegel Dep. Tr. 194:1–99:21, Dkt. No. 26-15 (providing dates).) Specifically, Hummel is the beneficial owner of Norway Capital Corporation, and Isla Mexico purported to transfer title to the Real Property to Norway Capital outright. (FAC ¶¶ 6, 76.) The Hovdes were not aware of the attempted transfer, or Hummel's involvement, until years later in 2019, as described below. (*Id.* ¶ 55.) In 2021, two years after the attempted transfer was revealed to the Hovdes, they initiated a fraudulent conveyance action in Mexico. (*Id.* ¶ 56.) That action sought to prevent or unwind the transaction between the Isla Parties, Riegel, Scotiabank, and Norway Capital. (*Id.*) Here in the United States, in 2018, the Hovdes sued Isla USA, JJBA, and Riegel in this District, alleging breach of contract for failure to pay back the loan principal and interest owed under the Mortgage Note & Guaranty and the Continuing Unconditional Guaranty ("Breach of Contract Action"). (*Id.* ¶ 57.) Also in 2018, Isla USA, JJBA, and Riegel sued to enjoin a Uniform Commercial Code Sale, initiated by the Hovdes, of the shares collateralized by the Unit Pledge Agreement ("Personal Property"). (*Id.* ¶ 61.)

In 2019, Riegel was deposed in the Breach of Contract Action. (*Id.* ¶ 63.) In his deposition, he revealed that Hummel had spent hundreds of thousands of dollars to fund the litigation efforts of Riegel and the Isla Parties. (*Id.* ¶¶ 65–67.) As described by Riegel, Hummel's

funding began in 2011 and continues today. (*Id.* ¶¶ 72, 81.) The Hovdes allege that Hummel's financial support was part of a scheme by which Hummel would obtain the Real Property for himself. (*Id.* ¶¶ 69, 71.) They allege that Hummel sought to obtain the Real Property despite being aware that the Hovdes have a valid security interest in the Real Property and the Personal Property. (*Id.* ¶¶ 70, 98.) There is no allegation in the FAC that title to the Real Property has in fact been transferred to Norway Capital (*i.e.*, Hummel). But the Hovdes allege that, "[i]f Hummel's efforts are successful, the Isla Parties will grant him title to the Real Property despite their obligations to the Hovdes." (*Id.* ¶ 82.)

The Isla Parties and Riegel, funded by Hummel, have found some success in their American litigation efforts.[1] (*Id.* ¶¶ 83–84.) In 2019, Isla USA, JJBA, and Riegel prevailed in the Breach of Contract Action in the district court, based on a statute-of-limitations defense. (*Id.* ¶ 83.) The Seventh Circuit later affirmed the judgment in their favor. (*Id.*) The Hovdes have therefore been unable to collect the principal and interest they are due under the various loan agreements and have expended millions of dollars in legal fees. (*Id.* ¶ 87.) In Mexico, the foreclosure action and fraudulent conveyance action are still pending, with Hummel allegedly continuing to pay the legal fees. (*Id.* ¶ 88.) The Hovdes allege that Hummel intended to induce a breach of the loan agreements when he paid the Isla Parties' legal fees. (*Id.* ¶ 94.) Moreover, the Hovdes allege that Hummel's financial support is the but-for cause of their inability to collect the money they are owed. (*Id.* ¶ 100.) Accordingly, the Hovdes argue that without Hummel's

---

[1] The FAC simultaneously alleges that the lawsuit to enjoin the Uniform Commercial Code Sale of the Personal Property was recently dismissed (FAC ¶ 61) and that it is ongoing. (*Id.* ¶ 88.) The allegation that the case is still pending appears to be a drafting error. That said, as will become clear below, whether the matter is still pending has no bearing on the Court's analysis or holding regarding the motion to dismiss.

actions, they would have recouped tens of millions of dollars in principal and interest, while avoiding millions of dollars in attorneys' fees. (*Id.* ¶ 102.)

Seeking to hold Hummel responsible for those losses, the Hovdes have brought a one-count FAC alleging tortious interference with contract under Illinois law. They seek damages consisting of the principal balance under the loan agreements, the total interest due under those agreements, and attorneys' fees incurred in all the prior lawsuits described above. They also request an award of their attorneys' fees stemming from the present lawsuit.

**DISCUSSION**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Although the Court accepts the plaintiffs' well-pleaded factual allegations as true for purposes of a Rule 12(b)(6) motion, conclusory allegations will not be sufficient to stave off dismissal. *Id.*; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In support of his motion, Hummel first argues that the Hovdes' claims are barred by the doctrine of *res judicata* because the FAC raises the same claims as the Breach of Contract Action, which was decided against the Hovdes. Second, Hummel argues that the Hovdes have

failed to state a claim for tortious interference with contract under Illinois law. Finally, Hummel argues that, regardless of any decision on the merits, the Hovdes cannot recover attorneys' fees. Before turning to Hummel's arguments, however, the Court begins by addressing a threshold issue raised by the Hovdes: whether Hummel waived these arguments by not raising them earlier.

## I. New Arguments in an Amended Motion to Dismiss

This case has seen a flurry of activity throughout its prolonged pleading stage. Relevant here, Hummel previously filed a motion to dismiss in this case that, among other things, argued that this Court lacked personal jurisdiction over Hummel. (Dkt. No. 30.) The present motion (Dkt. No. 67) is an amended motion to dismiss filed with the leave of the Court. The present motion does not present jurisdictional arguments but rather asserts a *res judicata* defense and argues that the Hovdes have failed to state a claim. The Hovdes contend that the Court should not consider these new arguments because Hummel waived them by not asserting them in his first motion.

Contrary to the Hovdes' position, however, this Court may consider the arguments presented in Hummel's amended motion to dismiss. The Hovdes ground their argument in Federal Rule of Civil Procedure 12(g).[2] Rule 12(g) provides that, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). "The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion

[2] The Hovdes' brief cites the nonexistent Rule 12(b)(6)(g). (Pl.'s Resp. Def.'s Am. Mot. Dismiss 2, Dkt. No. 74.) The Court assumes they intend to refer to Rule 12(g).

on another ground." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). In service of that policy, Rule 12(g) requires parties to "consolidate certain dismissal arguments in a single motion." *Id.* at 772. Nonetheless, the interpretation of Rule 12(g)(2) that the Hovdes advance has been rejected by the Seventh Circuit. "Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion. Stated differently, Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement." *Id.* at 773. Federal Rule of Civil Procedure 12(h)(1) enforces the consolidation requirement and specifies the defenses under Rule 12(b) that are waived when omitted from an earlier motion. *Id.* The failure-to-state-a-claim defense (Rule 12(b)(6)) is excluded from that list. Fed. R. Civ. P. 12(h)(1) (covering motions under Rule 12(b)(1)–(5)). "Failure-to-state-a-claim defenses are thus excepted from the Rule 12(g)(2) consolidation requirement and not included in the Rule [12(h)(1)] waiver rule." *Ennenga*, 677 F.3d at 773 (cleaned up). Hummel did not, therefore, waive the arguments he makes in the present motion by not including them in his first motion to dismiss.

## II. *Res Judicata*

Turning to Hummel's arguments, the Court next considers whether Hovdes' current action is barred by the doctrine of *res judicata*. Hummel claims that this case is, at bottom, the same as the earlier Breach of Contract Action that was decided against the Hovdes, both in the district court and on appeal. Accordingly, he argues, they may not take a second bite at the apple. The Hovdes present two counterarguments. First, they argue that it is not proper to assert r*es judicata* in a 12(b)(6) motion. Second, they contend that, even if properly presented, the elements of *res judicata* are not satisfied here.

*Res judicata* is an affirmative defense. *Saxon Mortg., Inc. v. United Fin. Mortg. Corp.*, 728 N.E.2d 537, 542 (Ill. App. Ct. 2000). The Hovdes are correct that "[t]he proper way to seek a dismissal based on an affirmative defense under most circumstances is not to move to dismiss under Rule 12(b)(6) for failure to state a claim. Rather, the defendant should answer and then move under Rule 12(c) for judgment on the pleadings." *Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020). However, the Seventh Circuit has also "carved out a narrow and pragmatic exception if the availability of a defense is apparent in the plaintiff's complaint itself. Because public records from previous litigation may be considered in a motion to dismiss, it is sometimes possible to resolve a *res judicata* defense on a Rule 12(b)(6) motion." *Id.* at 965 (citations omitted). So, the question becomes whether the *res judicata* defense asserted by Hummel is apparent on the face of the FAC.

As this Court sits in diversity, it must apply Illinois *res judicata* principles. *Harmon v. Gordon*, 712 F.3d 1044, 1054 (7th Cir. 2013). In Illinois, *res judicata* applies where there is: "(1) 'a final judgment on the merits rendered by a court of competent jurisdiction,' (2) 'an identity of cause of action,' and (3) the same parties or their 'privies' in both cases." *Id.* (quoting *Hudson v. City of Chicago*, 889 N.E.2d 210, 213 (Ill. 2008)).

The first element of *res judicata* exists here. Under both federal and Illinois procedural law, a dismissal based on a statute of limitations operates as a judgment on the merits barring a second suit in the same forum. Fed. R. Civ. P. 41(b); *Reinke v. Boden*, 45 F.3d 166, 170–72 (7th Cir. 1995). Moreover, the Hovdes do not contest that the earlier decisions in the Breach of Contract Action were on the merits for *res judicata* purposes.

The second and third *res judicata* elements present problems for Hummel, however. It is not apparent on the face of the FAC that there is an identity of the causes of action in the Breach

of Contract Action and the present case. Illinois uses a "transactional test to decide whether complaints allege the same cause of action. Under that test, separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (citations and internal quotation marks omitted). Here, the two relevant complaints assert different theories of relief: breach of contract in the first and tortious interference with contract in the second. But more important than any difference in legal theory, it is not clear that the same operative facts are driving both complaints. True, the alleged breach of related loan documents forms the basis of both actions. Both complaints also seek essentially the same relief—the only difference being the FAC's request for attorneys' fees in this case. But despite the areas of overlap, the relevant conduct alleged is quite different in the two cases.

The alleged wrongful conduct in the Breach of Contract Action was the failure of Isla USA, JJBA, and Riegel to pay back the money owed under the Mortgage Note & Guaranty and the Continuing Unconditional Guaranty. That cause of action arose in 2008, when those parties defaulted on the loans. As soon as they defaulted, they were in breach. And Hummel had nothing to do with that breach. In contrast, the wrongful conduct identified in the present case is Hummel's alleged inducement of the Isla Parties and Riegel to breach the Mortgage Agreement and to fight the Hovdes' attempts to recover damages stemming from the breach of the other loan agreements. Hummel allegedly began financially supporting the Isla Parties and Riegel's litigation in 2011—well after the breach that drove the Breach of Contract Action occurred. The alleged attempt to transfer the Real Property occurred in 2016, and the Hovdes became aware of it in 2019, after they had already filed the Breach of Contract Action. While this timeline casts

doubt on the connection between Hummel's actions and the relief the Hovdes now request in this case, it also indicates that the operative facts are not the same across the prior case and current case.

Simply put, while the two cases are closely related, they do not stem from "the same actions taken by the same person in the same time frame." *Talano v. Bonow*, No. 00 C 1208, 2002 WL 31061198, at *2 (N.D. Ill. Sep. 16, 2002). An obvious connection between two cases does not, on its own, mean they are the same causes of action for *res judicata* purposes. *Saxon Mortg., Inc.*, 728 N.E.2d at 544. Nor does the "fact that the same underlying [contract] was involved in both cases . . . establish that they are the same cause of action." *Id.* Thus, the Court cannot find that the two cases present the same cause of action, at least not based solely on the allegations in the FAC and the record of the prior litigation. Because it is not apparent on the face of the FAC that the second element of the *res judicata* defense it satisfied, the argument is not properly decided on a Rule 12(b)(6) motion.

Touching briefly on the final element of the *res judicata* defense, Hummel was not a party to the Breach of Contract Action. And the parties dispute whether Hummel was in privity with the defendants in that case. Hummel correctly identifies that the Hovdes repeatedly allege in the FAC that Riegel and Hummel are partners. This, he argues, establishes that privity exists.[3] However, the term partnership has both a colloquial and a legal meaning. To the extent the

[3] The extensive partnership allegations were not present in the initial Complaint. (Dkt. No. 1.) Hummel argues the Hovdes added the allegations to the FAC for the explicit purpose of trying to establish that exercising personal jurisdiction over him was appropriate and they cannot now disavow the allegations. This may be true. But the argument rests on a false equivalence. The degree of contacts with a forum necessary to establish personal jurisdiction is different than what is required to establish privity. *See B.D. ex rel. Myers v. Samsung Sdi Co.*, 143 F.4th 757, 765–66 (7th Cir. 2025) (describing test for specific personal jurisdiction); *Parungao*, 858 F.3d at 457 (describing test for privity). It is not inconsistent to allege the existence of an informal partnership between Hummel and Riegel sufficient to establish personal jurisdiction, while also arguing that they are not in privity.

Hovdes allege the existence of a legal partnership, that is a legal conclusion that the Court does not need to accept as true at the pleadings stage. *Iqbal*, 556 U.S. at 678. The factual allegations in the FAC do not clearly allege the existence of a partnership. Because the existence of a partnership is "to be determined by the fact finder from all the facts and circumstances presented," the Court cannot resolve the issue now without the benefit of discovery. *Argianas v. Chestler*, 631 N.E.2d 1359, 1369 (Ill. App. Ct. 1994).

The partnership allegations are not the only grounds on which Hummel urges the Court to find privity. Indeed, whether one party "adequately represent[s] the same legal interests" of another party is the test for privity in Illinois. *Parungao*, 858 F.3d at 457 (internal quotation marks omitted). Hummel argues that, based on the allegations in the FAC, he and the defendants in the Breach of Contract Action represent the same legal interests. In the end, that may prove to be true. However, "determining privity requires careful consideration of the circumstances of each case." *Apollo Real Est. Inv. Fund, IV, L.P. v. Gelber*, 935 N.E.2d 963, 973 (Ill. App. Ct. 2010). At the pleadings stage, it is not apparent from the factual allegations in the FAC that Hummel and the defendants in the Breach of Contract Action represent the same legal interests. Without the benefit of discovery, a finding that privity exists would be premature.

**III. Failure to State a Claim**

Hummel next argues that the Hovdes fail to state a claim for tortious interference. First, he contends that funding a meritorious legal defense is simply not actionable under Illinois law. In addition, he argues that the Hovdes have pleaded facts that fail to meet, and indeed negate, the elements of tortious interference with contract. The Court agrees that the Hovdes have failed to state a claim, although on somewhat different grounds than those argued by Hummel.

### A. Funding a Legal Defense

To state a claim for tortious interference with contract under Illinois law, a plaintiff must allege facts sufficient to establish

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (internal quotation marks omitted). As an initial matter, it is doubtful that funding a legal defense can be the sort of "wrongful conduct" sufficient to support a claim for tortious interference with contract. Hummel's briefs in support of his motion to dismiss somewhat conflate an absolute litigation privilege, a conditional privilege to interfere with contractual rights, and broader public policy considerations under Illinois law. None of those directly resolve the present case. That said, principles drawn from the cases discussing those privileges suggest that a tortious interference claim premised solely on funding litigation, and especially a legal defense, would not succeed in an Illinois court.

Illinois recognizes as an affirmative defense an absolute privilege immunizing attorneys and parties to litigation from tort liability for communications and conduct connected with the litigation. *GC Am. Inc. v. Hood*, No. 20-cv-03045, 2022 WL 910556, at *6 (N.D. Ill. Mar. 29, 2022); *see also Bushel v. Caterpillar, Inc.*, 683 N.E.2d 1286, 1288 (Ill. App. Ct. 1997) (specifying that the privilege covers parties as well as attorneys). Although the Court is not aware of any Illinois court having specifically held that the absolute litigation privilege applies to claims for tortious interference with contract, *GC Am. Inc.*, 2022 WL 910556, at *6, at least one federal court has applied Illinois law to conclude that the privilege applies. *Creation Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 697 (N.D. Ill. 2022). Under a related but distinct rule, Illinois law

is clear that "the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process." *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983). The wrongful filing of a lawsuit cannot support any other theory of tort liability. *Havoco of Am., Ltd.*, 702 F.2d at 647; *Creation Supply*, 608 F. Supp. 3d at 693; *Pittsfield Dev., LLC v. Lynd*, No. 19-cv-01321, 2020 WL 6701104, at *7 (N.D. Ill. Nov. 13, 2020).

Separate from a litigation privilege, Illinois recognizes "a privilege in intentional interference with contract cases where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." *Village of Lake Barrington v. Hogan*, 649 N.E.2d 1366, 1374 (Ill. App. Ct. 1995). This privilege is conditional and depends on the interest being protected by the defendant. *Creation Supply*, 608 F. Supp. 3d at 689–90. Despite being described as a balance of interests, the "privilege often arises out of specific legally defined rights or statuses." *Kiosk Promotions, Inc. v. Texas Wiz, LLC*, No. 1:19-CV-01847, 2021 WL 4498907, at *4 (N.D. Ill. Mar. 30, 2021). The privilege often applies, for example, to corporate officers, a company's agents, or someone's lawyers. *Creation Supply*, 608 F. Supp. 3d at 691; *see also Waldinger Corp. v. CRS Grp. Eng'rs, Inc., Clark Dietz Div.*, 775 F.2d 781, 789–90 (7th Cir. 1985) (describing these interests in terms of fiduciary duty).

Neither the litigation privilege nor the conditional privilege to interfere is a perfect fit for Hummel's alleged conduct. He was not a party to any prior litigation and he is not an attorney, so the litigation privilege does not necessarily apply. Similarly, he has not been accused of wrongfully filing a lawsuit against the Hovdes. So, the Illinois rule that filing a lawsuit cannot support tort liability aside from a claim of malicious prosecution or abuse of process is not directly on point either.

Hummel invokes the conditional privilege described in *Hogan* to argue that funding the Isla Parties and Riegel's litigation is analogous to an "act[] involving the first amendment right to petition the government for redress of grievances." 649 N.E.2d at 1374. The right to petition the government has been recognized as an interest protected by the conditional privilege to intentionally interfere with a contract right. *Id.* And it extends to litigation, not just lobbying or other forms of petitioning the government. *King v. Levin*, 540 N.E.2d 492, 494 (Ill. App. Ct. 1989). However, Hummel is a third party and not directly involved in any of the litigation at issue here. Again, the privilege typically arises from "specific legally defined rights or statuses." *Kiosk Promotions*, 2021 WL 4498907, at *4. If Hummel and Riegel were indeed partners, Hummel might now enjoy the protection of the privilege. But as noted above, it is unclear from the FAC that Hummel had any legal relationship with the parties accused of breaching agreements with the Hovdes. Thus, it is not clear that Hummel had the "legally defined right[] or status[]" usually required for the conditional privilege to extend to him. *Id.*

While neither the absolute litigation privilege nor the conditional privilege to interfere with contract rights is directly applicable, Hummel's broader argument that his conduct is not actionable is a strong one. To the extent the Hovdes premise Hummel's liability on his funding of litigation, the Court is not persuaded that such conduct can support tort liability. This is especially true given that the litigation has not proved to be frivolous.

"The purpose of imposing tort liability upon persons who interfere with the contractual relations of others is to protect interests in contractual relations against forms of interference which, on balance, the law finds repugnant." *In re Est. of Albergo*, 656 N.E.2d 97, 104 (Ill. App. Ct. 1995). The values espoused in decisions rejecting tort liability based on initiating litigation make it difficult to conclude that Illinois courts would find defending a lawsuit or, by extension,

funding a legal defense "repugnant" to the law. Illinois recognizes an "obvious public interest in affording every citizen the utmost freedom of access to the courts." *Lyddon v. Shaw*, 372 N.E.2d 685, 690 (Ill. App. Ct. 1978). It does so because "[f]ree access to the courts as a means of settling private claims or disputes is a fundamental component of our judicial system, and 'courts should be open to litigants for the settlement of their rights without fear of prosecution for calling upon the courts to determine such rights.'" *Id.* (quoting *Schwartz v. Schwartz*, 8 N.E.2d 668, 670 (Ill. 1937)). These "Illinois common law principles" undergird the rule that liability for tortious interference may not be based on the wrongful filing of a lawsuit. *Havoco of Am., Ltd.*, 702 F.2d at 647.

If "public interest demands that [courts] reject any effort to extend the tort liability for the ***wrongful filing*** of a lawsuit," *Lyddon*, 372 N.E.2d at 690 (emphasis added), it would be odd to extend tort liability to the ***meritorious defense*** of a lawsuit. The Hovdes urge the Court to hold Hummel liable for tens of millions of dollars in damages stemming from the Isla Parties' alleged breach of contract. They primarily base that liability on Hummel providing financial support to the Isla Parties and Riegel as they defended lawsuits in this District and in Mexico.[4] However, the Court is not aware of any example of a party, or a financial backer of such a party, being held liable in tort for defending itself in a lawsuit—and certainly not an example where the legal defense was successful. Nor have the Hovdes identified any legal authority, from Illinois or elsewhere, supporting such a theory of liability. Against the common-law backdrop emphasizing free access to the courts and considering the lack of authority supporting the Hovdes' novel theory, the Court concludes that funding a legal defense is not wrongful conduct sufficient to

[4] To the extent the Hovdes believe that the lawsuit brought by Isla USA, JJBA, and Riegel to enjoin the Uniform Commercial Code Sale of the Personal Property provides a basis for liability, that is squarely foreclosed by *Havoco of America, Ltd.*, 702 F.2d at 647.

hold Hummel liable for tortious interference with contract. To conclude otherwise would permit the perverse outcome of allowing tort liability for funding a meritorious defense while prohibiting tort liability for filing a frivolous lawsuit.

**B. Other Acts of Interference**

The Hovdes assert that their claim is also based on conduct other than Hummel funding the legal efforts opposing them. They allege that Hummel's funding was part of a broader scheme to steal the Real Property from them. Although the claim of a "scheme" is somewhat vague, it is reasonable to infer from the facts alleged, accepted as true, that Hummel participated in "some active persuasion, encouragement, or incit[ement]" of Isla Mexico to transfer the Real Property to an entity he controlled. *Cf. Pittsfield Dev., LLC*, 2020 WL 6701104, at *7 (internal quotation marks omitted) (providing the definition of "inducement" but explaining that a plaintiff's vague allegations of a "scheme" to downzone a building were insufficient to allege inducement). For example, the Hovdes allege that Hummel helped to "concoct" and "direct" the legal strategy deployed against them, prior to the attempted property transfer. (FAC ¶¶ 69, 86.) With that in mind, the Court considers whether any of Hummel's conduct other than funding litigation supports to a plausible claim for tortious interference with contract.

*1. Issue Preclusion*

As a threshold issue, Hummel argues, incorrectly, that the doctrine of issue preclusion is relevant to the question of whether the elements of tortious interference are satisfied here. Specifically, to negate the first element of the tort (a valid and enforceable contract) he contends that the Hovdes may not relitigate the prior determination in the Breach of Contract Action that there was no valid and enforceable contract (and thus no breach) because the statute of

limitations had run. That argument misses the point and mischaracterizes the Seventh Circuit's holding in that case.

The Seventh Circuit did not determine that there was not a breach. Rather, it determined that the statute of limitations had run by October 18, 2018, at the latest. *Hovde v. ISLA Dev. LLC*, 51 F.4th 771, 774 (7th Cir. 2022). But the Seventh Circuit never reached the issue of whether the Mortgage Note & Guaranty or the Continuing Unconditional Guaranty were valid and enforceable before the statute of limitations expired. And the district court opinions did not address the validity of the contract either. *See generally Hovde v. ISLA Dev. LLC*, No. 18-cv-7323, 2021 WL 4477912 (N.D. Ill. Sep. 30, 2021) (discussing the statute of limitations but not the validity of the agreements); *Hovde v. ISLA Dev. LLC*, No. 18 C 7323, 2020 WL 4430565 (N.D. Ill. July 31, 2020) (same). The Seventh Circuit did determine that after the limitations period, the contract obligations were no longer enforceable in court. *Hovde*, 51 F.4th at 774–75. But it also explained that, in Illinois, the statute of limitations has no impact on a party's obligation under a contract, even if it impacts the enforceability of the obligation. *Id.* at 778. So, even after the statute of limitations had run, assuming the agreements were otherwise valid, the Isla Parties and Riegel were still obligated to pay the Hovdes. That obligation simply could not be enforced in court. *Id.* Moreover, as addressed further below, the Hovdes have alleged multiple breaches that occurred before the statute of limitations expired. And contrary to Hummel's assertions, no prior court decision has established as a matter of law that there was no contractual breach. Accordingly, issue preclusion is not relevant to the Court's analysis of the first element of tortious interference.

### 2. *Merits of Tortious Interference Claim*

The Hovdes sufficiently allege the existence of several valid and enforceable contracts with the Isla Parties and Riegel, at least up to the expiration of the statute of limitations in 2018. Aside from his mistaken issue preclusion argument, Hummel does not contest the validity of the agreements. The Hovdes also allege that Hummel was aware of the existence of the agreements, given his involvement in litigation related to them. Again, Hummel does not contest his knowledge of the agreements. The Hovdes have therefore pleaded facts satisfying the first and second elements of tortious interference.

Consideration of the third (intentional inducement) and fourth (subsequent breach) elements requires some attention to the timeline of the alleged conduct. *HPI Health Care Servs., Inc.*, 545 N.E.2d at 676. The Isla Parties and Riegel initially breached their agreements with the Hovdes when they defaulted on loan payments that they were obligated to pay the Hovdes. That breach occurred in 2008. Yet the Hovdes allege that Hummel began funding litigation in 2011. If Hummel did something—other than provide funds—that might expose him to liability for tortious interference, it still cannot be the case that his activity, which allegedly started in 2011, induced a contractual breach three years earlier. *See Marcus v. Nat'l Life Ins. Co.*, 422 F.2d 626, 630 (7th Cir. 1970) ("If a breach was induced, the injury occurred when the breach occurred . . . .").

The Hovdes do not allege any inducement prior to 2011. And the law is clear that the breach of which a party complains must be subsequent to the alleged tortious inducement. *HPI Health Care Servs., Inc.*, 545 N.E.2d at 676. This presents a challenge for the Hovdes, considering that much of the relief they request (loan principal and accumulated interest) stems from the initial breach in 2008. The Hovdes understandably seek to circumvent this obstacle,

which stands in the way of what they really want here: full recovery from Hummel of what they failed to recover from the Isla Parties and Riegel in the Breach of Contract Action. Thus, they essentially argue that Hummel, by coordinating with Riegel to fight the Hovdes in court, "intended to induce a continuing breach" of the various loan agreements. (*See* FAC ¶¶ 84–87, 92, 96.) But "[t]here [can]not be a continuous inducement to carry on continuing breaches after the breach ha[s] in fact occurred." *Marcus*, 422 F.2d at 630; *see also Howard T. Fisher & Assocs., Inc. v. Shinner Realty Co.*, 164 N.E.2d 266, 272 (Ill. App. Ct. 1960) ("It is a contradiction in terms to say that there can be a continuous procuring of a breach of a contract after the breach has actually occurred.").

With respect to most of the Hovdes' requested relief, the claimed damages stem from a breach that took place in 2008. Hummel did not allegedly become involved until later. The Hovdes cannot manufacture liability for the 2008 breach by arguing that Hummel later prevented them from seeking relief in court. Without any allegation that Hummel's conduct induced the Isla Parties and Riegel to breach their agreements in the first place, Hummel cannot be held liable for that breach. Accordingly, the Hovdes may not recover the loan principal or interest due under the loan agreements, which are the damages they suffered from the alleged 2008 breach.

Separately, it is still possible that Hummel and Riegel's alleged scheme began in 2011 and induced a subsequent breach. Namely, the alleged attempt to transfer the Real Property to Hummel's entity, Norway Capital, that took place in 2016. The Hovdes urge, and the Court agrees, that this could represent a separate subsequent breach of the loan agreements (*e.g.*, the Mortgage Agreement) that was induced by Hummel's conduct. In that case, the third and fourth elements of tortious interference with contract would be satisfied.

Unfortunately for the Hovdes, there is no allegation in the FAC that the transfer was effective, which means there is no allegation sufficient to support the fifth element of the tort (damages). The FAC carefully describes what allegedly occurred as an "attempted transfer" or "attempted theft" of the Real Property. (*E.g.*, FAC ¶¶ 55–56.) It does not allege that the Hovdes have, at this point, lost their security interest in the Real Property or that Hummel has in fact obtained title to the property.[5] And while damages as requested relief are distinct from damages as an element of the alleged tort, it is telling that the Hovdes do not ask for any compensation tied to loss of the Real Property itself. The lack of an allegation that the transfer of the Real Property has been completed precludes the tort claim based on that transfer. Even if the Isla Parties breached an agreement with the Hovdes by trying to transfer the Real Property to Norway Capital, that attempt has not resulted in harm to the Hovdes. Put simply, the Hovdes have not alleged damages stemming from the attempted transfer. Because damages are a required element of tortious interference, the Hovdes fail to state a claim based on the attempted property transfer.

Because the purported initial breach of contract occurred before Hummel's alleged involvement began, and because the Hovdes have not pleaded damages stemming from the only alleged breach that followed Hummel's involvement, the Hovdes' tortious interference claims fail. As a result, the FAC must be dismissed. Since the Hovdes claims are dismissed for failure to state a claim, it is unnecessary for the Court to consider the question of whether attorneys' fees are recoverable in this context.

[5] While the Court does not rely on it, the Hovdes attached Riegel's deposition transcript to the FAC as an exhibit. In that deposition, Reigel states that, to his knowledge at the time of the deposition, Isla Mexico still held title to the Real Property and the Hovdes had possession of the Real Property. (Jeffrey Riegel Dep. Tr. 197:11–99:21.)

## CONCLUSION

For the foregoing reasons, Hummel's motion to dismiss (Dkt. No. 67) is granted and the FAC is dismissed. As the Court cannot conclude that it would be futile for the Hovdes to amend the complaint to remedy the deficiencies discussed in this opinion, the dismissal is without prejudice to the Hovdes filing a second amended complaint.

ENTERED:

Dated: November 18, 2026

Andrea R. Wood
United States District Judge